JAMES COMFORT, Jr. *v.* M. L. PATTERSON.

CLERK AND MASTER. *Deposit of funds in Bank. Set-off.* The Clerk and Master of a Chancery Court kept a deposit account at a bank in his name as " C. & M.,"consisting partly of his individual money, partly of money collected by him officially but belonging to him for costs earned, and partly of money belonging to the suitors of the court,

entered to his credit without discrimination, and on which he was in the habit of checking for his individual purposes. Held, upon the insolvency of the bank, and an assignment of its assets in trust for creditors, that so much of the deposit as belonged to the depositor individually could be set off against a debt due by him personally to the bank by note in the hands of the trustee, and the evidence showing a recent individual deposit of a much larger sum than the balance of the note. it was further held, that the presumption, in absence of all evidence to the contrary, would be that the individual interest of the depositor was sufficient to set off such balance. In such case, it seems, the title and control of the deposit would be so far in the depositor personally, that the addition of his official title would be a mere *descriptio personae,* not altering the rights of either party.

---

FROM KNOX.

---

Appeal from the Chancery Court at Knoxville. GEORGE WASHINGTON, Sp. Ch.

JAMES COMFORT for complainant.

LEWIS TILLMAN for defendant.

COOPER, J., delivered the opinion of the court.

On the 4th of April, 1877, the Commercial Bank of Knoxville became insolvent, and made an assignment of its assets for the benefit of its creditors, the complainant being the successor of the first trustee. At the time of its suspension the bank was indebted to the defendant as a depositor in the sum of $5,517.75, the account being kept in the name of " M. L. Patterson, C. & M.," he being clerk and master of the Chancery Court. The deposits in the account consisted partly of Patterson's individual money strictly,

partly of costs earned to which he was entitled, and partly of funds received officially, and for which he was accountable as clerk and master. On the 19th of March, 1877, he deposited to this account $1,500 of his individual means. Two days before, the bank had discounted for him a note for $1,000, the proceeds of which were not paid, but simply passed to the credit of the same account. The defendant was in the habit of checking against this account for his individual purposes. He kept the funds of his office deposited at other banks at Knoxville, as well as at this bank. . At the time of the suspension of the bank, the defendant held three certificates of deposit against the bank, which had been previously transferred to him, aggregating less than the face of the note. It is conceded that these certificates are a proper set-off against the note, and the only question raised by the record is, whether the residue of the note can be met by a set-off of so much of the deposit.

The assets of an insolvent moneyed corporation, under our statutes and decisions, become, from the date of assured insolvency, a trust fund for the benefit of creditors in the order prescribed by law, and otherwise *pro rata*. *Marr* v. *Bank of West Tennessee*, 4 Col., 471; *Smith* v. *St. Louis Mutual Life Ins. Co.*, 2 Tenn. Ch., 737. But the assets would only be the balance of debt due from the debtor, at the date of insolvency, after deducting any just credit or set-off. It is only what remains after a just settlement of mutual debts, which becomes a trust fund for distribution. *Mosely* v. *Williamson*, 5 Heis., 278. The cer-

tificates of deposit held by the defendant as assignee of the depositors were therefore, beyond all question, a proper set-off to the note of the defendant held by the trustee as assignee of the bank, and for the same reason, so much of the deposit of $5,517.75 as belonged to the defendant individually would, as between him and the trustee, be also a just set-off to the residue of the note. The record does not ascertain the exact amount of this part of the deposit. It does, however, show that a part of the funds were thus owned by the defendant, and that he had recently deposited to the account the proceeds of the note itself and $1,500 in addition, of his individual means. These facts are sufficient to throw the burden of proof on the complainant to show, as could easily be done, the withdrawal of these individual funds. In the absence of such proof, we may safely assume that the defendant's individual share of the fund is sufficient to satisfy the residue of the note. Under these circumstances, it is hardly worth while to determine authoritatively whether the defendant might not also set-off, if necessary, against his note enough of the deposit derived from official collections, and which the suitors of the court might be able to follow. We have no law directing or authorizing the clerk and master of a court to deposit in bank money held by him *virtute officii,* and there can scarcely be a doubt that the title and control of such funds, upon a general deposit in his name as clerk and master without any designation of the case or the party entitled, would be so far in him personally that the addition of his official title would be

43—VOL. 2.

a mere *descriptio personæ,* not altering the rights of either party. *Miller* v. *Receiver of Franklin Bank,* 1 Paige, 444. At any rate where, as in this case, the official funds were blended with his own funds.

Affirm the decree with costs.